J-S47010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AMY COLLEEN MCBRIDE, | |
| Appellant | No. 1729 MDA 2014 |

Appeal from the Judgment of Sentence entered June 11, 2014,
in the Court of Common Pleas of Lebanon County,
Criminal Division, at No(s): CP-38-CR-0000292-2013

BEFORE: ALLEN, OTT, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.: **FILED JULY 29, 2015**

Amy Colleen McBride, ("Appellant"), appeals from the judgment of sentence imposed following her conviction of robbery and theft by unlawful taking relative to the October 2, 2009 robbery of a Metro Bank branch. Appellant further appeals from the trial court's November 22, 2013 order denying her motion to suppress evidence. Upon review, we affirm on the basis of the trial court's well-reasoned opinion.

Appellant raises four issues on appeal:

1. Did the Commonwealth fail to present sufficient evidence at trial to prove beyond a reasonable doubt that Appellant was the person who robbed the Metro Bank on October 2, 2009?

2. Did the Lower Court err in denying Appellant's Omnibus Pre-Trial Motion to Suppress Evidence to exclude Rebecca Plourde's out-of-court and in-court identifications implicating Appellant as the individual who robbed the Metro Bank on October 2, 2009?

*Retired Senior Judge assigned to the Superior Court.

3. Did the Jury give too great a weight to Ms. Plourde's identification of Appellant as the individual who robbed the Metro Bank on October 2, 2009?

4. Did the Trial Court err in allowing the Commonwealth to present at trial several photographs of Appellant taken from an unrelated arrest?

Appellant's Brief at 4.

Appellant first challenges the sufficiency of the evidence supporting her convictions. We examine that issue as follows:

[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jannett,* 58 A.3d 818, 819-820 (Pa. Super. 2012) (citations omitted).

In considering Appellant's second issue assailing the trial court's denial of Appellant's suppression motion relative to Ms. Plourde's identifications of Appellant, we are mindful of the following:

When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. []

*In re O.J.,* 958 A.2d 561, 564 (Pa. Super. 2008) (*en banc)*[.]

\*\*\*

When determining the admissibility of identification testimony, this Court has held that suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. **A pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification.**

[*Commonwealth v. Kubis,* 978 A.2d 391, 396 (Pa. Super. 2009)] (internal quotation marks and citation omitted) (emphasis added). "Due process does not require that every pretrial identification of witnesses must be conducted under laboratory conditions of an approved lineup." *Commonwealth v. Jones,* 220 Pa.Super. 214, 283 A.2d 707, 708–09 (1971) (citation omitted). "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *Commonwealth v. Armstrong,* 74 A.3d 228, 238 (Pa. Super. 2013) (citation omitted).

***Commonwealth v. Lark,*** 91 A.3d 161, 168 (Pa. Super. 2014) (emphasis in original).

Appellant's third issue assails the weight the jury gave Ms. Plourde's testimony. However, in analyzing this challenge, we cannot disregard that we may not re-weigh the testimony adduced at trial. ***See Commonwealth v. Hawkins,*** 701 A.2d 492, 501 (Pa. 1997) (the credibility of witnesses is

- 3 -

"solely for the [fact finder] to determine"); *see also Commonwealth v. Dougherty,* 860 A.2d 31, 36 (Pa. Super. 2004) (citations omitted) ("This Court cannot substitute its judgment for that of the [fact finder] on issues of credibility."). Moreover, we recognize that "[i]t is the function of the [fact finder] to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal." *Commonwealth v. Reynolds,* 835 A.2d 720, 726 (Pa. Super. 2003) (citation omitted).

In examining Appellant's fourth issue regarding the admission of Appellant's photographs from an unrelated arrest, we recognize:

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (internal citations omitted). We are further cognizant of our Supreme Court's explanation that:

> The admissibility of photographs falls within the discretion of the trial court and only an abuse of that discretion will constitute reversible error. *See Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385, 405 (2003) *(citing Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711, 726 (1998), *cert. denied,* 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999)).

***Commonwealth v. Lowry,*** 55 A.3d 743, 753 (Pa. Super. 2012) ***citing*** ***Commonwealth v. Malloy***, 856 A.2d 767, 776 (2004); ***see also*** ***Commonwealth v. Faraci,*** 466 A.2d 2228, (Pa. Super. 1983) (internal citations omitted) ("Once photographs are proffered as evidence, the trial judge must first determine whether they are inflammatory; if not, then whether they are admissible depends entirely upon basic evidentiary rules of materiality, relevance and competency.").

Mindful of the foregoing precepts and standards of review applicable to Appellant's four issues, we carefully examined the certified record.  Following our examination of both the record and applicable case law, we have determined that Appellant's claims of trial court error lack merit.  In disposing of this appeal, we adopt and incorporate as our own the October 2, 2014 opinion of the Honorable Charles T. Jones, Jr.  Judge Jones' opinion, in a well-reasoned and well-written fashion, comprehensively addresses each of Appellant's issues challenging the sufficiency of the evidence, the weight afforded to Ms. Plourde's testimony, and the trial court's evidentiary rulings. We therefore adopt the trial court's October 2, 2014 opinion in affirming Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2015

IN THE COURT OF COMMON PLEAS
OF LEBANON COUNTY, PENNSYLVANIA

ENTERED & FILED
2014 OCT -2 A 0: 37
CLERK OF COURTS
LEBANON, PA

## CRIMINAL DIVISION

COMMONWEALTH OF,
PENNSYLVANIA
Plaintiff

     v.

AMY MCBRIDE,
Defendant

:
:
:
:
:
:
:
:
:
:
:

CP-38-CR-292-2011

**APPEARANCES:**

Pier N. Hess, Esquire
District Attorney's Office

For Commonwealth

Scott M. Jocken, Esquire
Public Defender's Office

For Defendant

**OPINION BY JONES, J.:**

Before this Court is Defendant's Post-Sentence Motion. Defendant raises the following issues in her Motion:

1. Whether the Commonwealth failed to present sufficient evidence at trial to prove beyond a reasonable doubt that Defendant was the individual who robbed the Metro Bank in Palmyra, Pennsylvania, on October 2, 2009?

2. Whether the suppression court erred in denying Defendant's Omnibus Pre-trial Motion to Suppress Evidence to exclude Rebecca Plourde's out-of-court and in-

2

court identifications implicating Defendant as the individual who robbed the Metro Bank in Palmyra, Pennsylvania, on October 2, 2009?

3. Whether the jury gave too great of weight to Ms. Plourde's identification of Defendant as the individual who robbed the Metro Bank in Palmyra, Pennsylvania, on October 2, 2009?

4. Whether the Trial Court erred and abused its discretion in allowing the Commonwealth to present to the jury several photographs of Defendant taken from an unrelated arrest?

## I. FACTUAL HISTORY

On October 2, 2009, the Metro Bank located in Palmyra, Lebanon County was robbed. A heavy set white female entered the bank, presented bank teller Rebecca Plourde (herein "Ms. Plourde") with a note which demanded money and threatened the use of a firearm. Ms. Plourde complied with the demand note and gave the robber two thousand, six hundred fifty dollars ($2,650). The Palmyra Borough Police Department, with the assistance of Lebanon County Detective Mike DiPalo (herein "Det. DiPalo"), responded to the incident.

Immediately following the robbery, Ms. Plourde was required by Bank policy to fill out two forms which collect information to give to law enforcement, including information about the robber's physical appearance. On one form, called an 'Ident-a-Card', Ms. Plourde described the robber as a female with strawberry blonde hair tucked up in baseball cap. Ms. Plourde did not fill out the portion of the card describing the individual's height, weight, build, apparent age, race, eyebrows, eyes, eye color, nose, teeth, chin, shape of face, and ears. Then she filled out the 'Holdup Description Form' on which she indicated that the person was between five foot two and five foot four inches tall, one hundred sixty (160) pounds, stalky, with "strawberry blonde/brown" hair. Ms. Plourde also indicated that the person was not wearing glasses. In the surveillance video, it is clear that the robber

3

is wearing glasses. Ms. Plourde also indicated that the person was wearing a denim jacket when the video showed the person was wearing a hooded sweatshirt.

Ms. Plourde also gave a description to Officer Timothy Lengle of the Palmyra Borough Police Department stating that the person was a white female, in her mid-fifties, with strawberry blonde hair, standing five feet four inches tall and weighing one hundred seventy-five pounds. In her written statement to police, Ms. Plourde described the robber as a women with brown hair and glasses wearing a baseball cap.

On April 30, 2012, Det. DiPalo emailed Ms. Plourde two photos of Defendant from 2010 and 2011 and asked if she was familiar with the individual in the photographs. Ms. Plourde responded with an email stating "that is her." This was the only communication between Det. DiPalo and Ms. Plourde since the day of the robbery. Det. DiPalo did not show Ms. Plourde a line up or a photo array, only the two photos of Defendant. Ms. Plourde identified Defendant as the robber at the Preliminary Hearing and a Pretrial Hearing.

## II.  PROCEDURAL HISTORY

On August 1, 2011, Defendant was charged with two (2) counts of Robbery and one (1) count of Theft by Unlawful Taking or Disposition for the incident that occurred at Metro Bank. On June 3, 2013, Defendant filed an Omnibus Pre-trial Motion to Suppress Evidence and Dismiss Charges. A pre-trial hearing was held before this Court on July 24, 2013. The parties were instructed to file briefs no later than August 2, 2013. This Court filed its Order and Opinion denying Defendant's Motion to Suppress Evidence on November 22, 2013.

On August 9, 2013, the Commonwealth filed a Motion pursuant to Pennsylvania Rules of Evidence Rule 404(b) and Motions in Limine seeking to introduce certain evidence, including Defendant's prior conviction for bank robbery. A hearing on the Commonwealth's Motion was held before this Court on December 11, 2013. This Court granted in part and denied in part the Commonwealth's Motion. The Commonwealth was

4

not permitted to use any evidence of a prior conviction and only one photograph was permitted to be used. This photo showed Defendant in street clothes against a blank wall.

A criminal jury trial was held before this Court on April 8, 2014. The jury found Defendant guilty of two (2) counts of Robbery and one (1) count of Theft by Unlawful Taking or Disposition. On June 11, 2014, Defendant was sentenced to an indeterminate period the minimum to be three (3) years and a maximum of fifteen (15) years of incarceration. This sentence was to be served consecutively to the sentence imposed on Defendant by the State of Maryland.

On June 20, 2014, Defendant timely filed her Post-Sentence Motion. The parties were directed to file briefs in support of their respective positions on Defendant's Motion. The matter is now ripe for disposition.

## III. DISCUSSION

*Sufficiency of the Evidence*

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa.Super. 2007) (citing **Commonwealth v. Frisbie**, 889 A.2d 1271, 1274–75 (Pa.Super.2005)).

5

The Commonwealth must prove each of the following elements at trial for each count of Robbery:

1. That a person committed a theft and

2. In the course of committing that theft, the person threatens another with or intentionally puts him in fear of immediate serious bodily injury

**18 Pa.C.S. § 3701(a)(1)(ii).** Defendant argues that the Commonwealth failed to prove that Defendant was the person that committed the Robbery at the Metro Bank. Defendant does not dispute that a Robbery occurred.

At trial, the Commonwealth presented the testimony of Ms. Plourde, the surveillance video of the robbery, and stills taken from the surveillance video to link Defendant to the Metro Bank robbery. Defendant argues that this was not sufficient to prove that she was the person who robbed the bank.

Defendant relies on *Commonwealth v. Smith* which states that "where the Commonwealth's sole identification evidence is based on similar height, coloration, and clothing it will not be enough to convict a defendant as the perpetrator of a crime." 283 Pa.Super. 360, 365 (1981) (citing **Commonwealth v. Crews**, 436 Pa. 346 (1970)). This is not the case here. Ms. Plourde did not testify that Defendant had a similar build or appearance as the person who robbed her. Ms. Plourde was certain that it was Defendant who had robbed her that day. Ms. Plourde was the teller that was robbed and had the best opportunity to observe the person. She was positive in her identification of Defendant.

Defendant also argues that the Commonwealth failed to present sufficient evidence to link her to the robbery because they did not present fingerprint evidence, handwriting evidence, the note or the check register used in the robbery, or the gun allegedly possessed by the robber. Defendant avers that the only evidence presented to link her to the crime was the testimony of Ms. Plourde which Defendant claims was tainted and unreliable because of the variations in her descriptions, the short period of time she viewed the robber,

6

and the suggestive procedure used by Det. DiPalo to have Ms. Plourde identify the Defendant.

Defendant's Pretrial Motion included the issue of whether Ms. Plourde's in-court identification of Defendant was tainted by Det. DiPalo's suggestive identification process. This Court agreed that Det. DiPalo had used a suggestive procedure in obtaining Ms. Plourde's out-of-court identification of Defendant. However, using the totality of the circumstances test, this Court found that Ms. Plourde's testimony was admissible because she was able to directly view Defendant at the time of the robbery and had given descriptions of the robber prior to being shown any photo of Defendant. Ms. Plourde was positive that Defendant was the person who robbed her on October 2, 2009 as she had never been robbed before and the incident impacted her severely.

Det. DiPalo testified that fingerprints were taken from the glass door through which the robber exited the Bank. The surveillance video and the testimony of Ms. Plourde showed that the robber was not wearing gloves at the time of the robbery. The fingerprints collected were tested and analyzed. The parties stipulated to the fact that the fingerprints were not matched to any individual, including Defendant. Defendant avers that this means she was not the robber, however, the lack of Defendant's fingerprint on the Bank door does not necessarily exclude Defendant. **See Commonwealth v. Wright**, 255 Pa.Super. 512, 516 (1978) (the absence of defendant's fingerprints is not exculpatory per se and might be explained for any one of many reasons consistent with his guilt); see also **Commonwealth v. McElligott**, 495 Pa. 75, 79 (1981).

The note and check register in which the note was written were not recovered. A gun, to which the note alluded, was also never recovered. Defendant alleges that the lack of these pieces of evidence also support her claim that the Commonwealth did not present sufficient evidence to link her to the crime. The Commonwealth is permitted to use only circumstantial evidence to prove their case. **See Commonwealth v. Kearney**, 92 A.3d 51, 64 (Pa.Super. 2014).

7

At trial, the jury was presented with testimony regarding Ms. Plourde's varying descriptions of the robber. They were shown the surveillance video, stills from that video, and a photo of Defendant which showed what she looked like around the time of the robbery. The jury was also told that the note, the check register, and the alleged gun were never recovered. Det. DiPalo testified that he had collected fingerprints from the door of the Bank and that none of the prints collected were identified as Defendant's. The parties stipulated to the fact that the fingerprints were not matched to any known individual.

The Commonwealth is not required to present evidence sufficient to preclude every possibility of innocence. **See Bruce**, 916 A.2d at 661; see also **Commonwealth v. Newsome**, 787 A.2d 1045, 1047 (Pa.Super.2001). "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." **Commonwealth v. Johnson**, 542 Pa. 384, 394 (1995). Here, the jury, as the trier of fact, weighed the testimony and evidence presented, and found that Ms. Plourde's identification of Defendant was credible and that there was sufficient evidence to prove beyond a reasonable doubt that Defendant was the person who had robbed the Metro Bank on October 2, 2009. Therefore, Defendant's Motion as to sufficiency of the evidence is denied.

*Denial of Defendant's Pre-trial Motion*

When a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible and was not obtained in violation of the defendant's rights. **Pa. R. Crim. P. 581(H)**. The suppression of evidence is only appropriate where a violation upon which the motion to suppress is based touches upon fundamental, constitutional concerns, was conducted in bad faith, or has substantially prejudiced the defendant. **Commonwealth v. Gentile**, 632 A.2d 573 (Pa.Super.1993). Questions of credibility and the weight to be accorded to witness

8

testimony are issues within the sound discretion of the trial court. **In re R.P.**, 918 A.2d 115 (Pa.Super.2007).

Where a suggestive procedure has been argued, the Commonwealth has the burden of proving that the photographic identification procedure was not suggestive, and the suppression court has the discretion to determine the weight and credibility of conflicting testimonies. **Commonwealth v. Hughes**, 555 A.2d 1264 (Pa. 1989). When a pretrial photographic identification is challenged by suppression motion for being unduly suggestive, the burden falls upon the Commonwealth to establish that any identification testimony to be offered at trial is free from taint of initial illegality. **Commonwealth v. Wade**, 867 A.2d 547 (Pa.Super. 2005).

The display of a single photograph to a witness by the police in this case was a clearly suggestive procedure. **Commonwealth v. Bradford**, 451 A.2d 1035, 1036-37 (Pa. Super. 1982).

> Following a suggestive pre-trial identification procedure, a witness should not be permitted to make an in court identification unless the prosecution establishes by clear and convincing evidence that the totality of the circumstances affecting the witness's identification did not involve a substantial likelihood of misidentification.

**Commonwealth v. Fowler**, 466 Pa. 198, 203 (1976).

> In determining whether an independent basis for identification exists, we must consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

**Commonwealth v. Carter**, 537 Pa. 233, 253-54 (1994) (citing **Commonwealth v. James**, 506 Pa. 526 (1985)).

In ruling on Defendant's Pre-trial Motion, this Court found that the procedure of presenting only two photographs, both of Defendant, to Ms. Plourde was a suggestive

9

procedure, but that considering the totality of the circumstances the "identification testimony supplied by Ms. Plourde at the preliminary hearing was sufficiently independent of the suggestive pre-trial identification procedure." In making this determination, this Court found that the most important factor in this case was the opportunity of the witness to view the suspect at the time of the crime. Ms. Plourde was able to directly view the Defendant at the time of the robbery, at close range, and was focused on her throughout the short interaction with Defendant.

While there were variations in the descriptions given by Ms. Plourde following the incident, all of the descriptions given are consistent with Defendant's appearance at the time of the crime. Even though there was a gap of several years between the crime and her in-court identification, Ms. Plourde was absolutely certain that Defendant was the person that robbed her in 2009. This Court found that Ms. Plourde's in-court identification was sufficiently independent of the suggestive procedure used to make her out-of-court identification. The jury was told of all of the various descriptions of the robber given by Ms. Plourde.

Defendant also argues that Ms. Plourde's description of the robber was influenced by Valerie Shimer (herein "Ms. Shimer"), the supervising teller who was on duty the day of the robbery. Ms. Shimer was with Ms. Plourde while she was filing out the identification forms immediately following the robbery. Ms. Shimer testified that she never saw the person who robbed the Bank. Ms. Plourde notified Ms. Shimer immediately after the robber left the Bank. Both Ms. Plourde and Ms. Shimer testified that Ms. Shimer did not influence Ms. Plourde's description. Ms. Shimer was present for support, she was not present to suggest to Ms. Plourde how the robber looked or what she was wearing, especially since Ms. Shimer had not seen the person who committed the robbery.

At trial, the jury was told of the suggestive procedure used by Det. DiPalo and he was questioned at length about this procedure. Det. DiPalo was questioned about his training in the area of witness identification and proper procedures. He was questioned as

10

to why he chose to use a procedure that he knew was not permitted. The jury was able to take this into consideration when weighing the testimony of Ms. Plourde and her in-court identification of Defendant. Further, the jury was shown the surveillance video, stills from that video, and a photo of Defendant from around the same time period. The jury was able to determine for themselves if Defendant was the person who committed the robbery. Therefore, Defendant's Motion regarding this Court's denial of Defendant's Pre-trial Motion is denied.

*Weight of the Evidence*

The standard of review for weight claims is as follows:

> A verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. A weight of the evidence claim is primarily directed to the discretion of the judge who presided at trial, who only possesses narrow authority to upset a jury verdict on a weight of the evidence claim. Assessing the credibility of witnesses at trial is within the sole discretion of the fact-finder. A trial judge cannot grant a new trial merely because of some conflict in testimony or because the judge would reach a different conclusion on the same facts, but should only do so in extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

**Commonwealth v. Blakeney**, 946 A.2d 645, 652-53 (Pa. 2008) (internal citations omitted). "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." **Commonwealth v. Johnson**, 542 Pa. 384, 394 (1995). The weight of any testimony is "exclusively within the jury's province." **Commonwealth v. Champney**, 574 Pa. 435, 444 (2003).

As discussed above, the jury was presented with plenty of evidence which the jurors were able to consider and determine what evidence was credible and assign weight to all of the evidence presented. The jury determined that it was Defendant that robbed the Bank

11

on October 2, 2009. This Court finds that the jury's verdict is not contrary to the evidence. Therefore, Defendant's Motion as to the weight of the evidence is denied.

*Admissibility of Photograph*

> The important question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity.

> Where the jury could have reasonably inferred from the photographic evidence presented at trial that a defendant was involved in prior criminal activity, reversible error occurred.

**Id**. at 730-31 (citing **Commonwealth v. Allen**, 448 Pa. 177 (1972); see also **Commonwealth v. Young**, 578 Pa. 71 (2004) (analyzing **Allen** and reviewing its application in different contexts)).

Defendant argues that the Commonwealth was permitted to introduce a photograph of Defendant which "clearly appeared to be a police mug shot." At trial, Commonwealth introduced a JNET booking photo of Defendant over Defendant's objection. The photo shows Defendant from the waist up, wearing street clothes, against a blank wall. The photo was taken in 2009 and was used to show Defendant's appearance around the time of the crime. There was nothing about the photo which "clearly" indicated that it was a "mug shot." In fact, Commonwealth attempted to admit several other photos which this Court determined were clearly police photos and would not allow those photos to be admitted because they would prejudice Defendant.

The jury was not told where the photo came from, why it was taken, or how the police obtained it. This Court determined that this photo would not prejudice Defendant

12

because there was nothing in or about the photo that would lead a juror to believe that it was related to prior criminal activity. Therefore, Defendant's Motion as to the admissibility of the JNET photo is denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Post-Sentence Motion is denied. An Order will be entered consistent with the foregoing.

13