J-S15026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON MCGONIGAL | |
| Appellant | No. 555 MDA 2014 |

Appeal from the Judgment of Sentence of October 17, 2013
In the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0000474-2013

BEFORE:  LAZARUS, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                    **FILED MARCH 30, 2015**

Jason McGonigal appeals his October 17, 2013 judgment of sentence. We affirm.

On December 20, 2012, around 9:30 p.m., Monroe Bell entered the Puff Super Value store in Philipsburg, Pennsylvania.  Peggy Marty, a store employee, was re-stocking the soda cooler.  She heard Bell enter and went to the counter.  Bell pulled out a knife and told Marty to "get all the money out of the register."  Notes of Testimony ("N.T."), 9/16/2013, at 43.  Bell also told Marty to give him the cash from a second register that was used for lottery receipts.  He then demanded two cartons of cigarettes.  As Bell left the store, Marty heard someone immediately outside the door say, "Let's get the fuck out of here."  *Id.* at 44.  However, Marty was unable to see the person outside.

An informant provided information to the police that Bell was involved in this robbery. When questioned by the police, Bell confessed to the robbery and implicated McGonigal as the person outside the store.

At McGonigal's jury trial, Bell testified as follows. He was living with his friend, Donald Pearsall, and Pearsall invited McGonigal, who was a friend of theirs from school, to stay for a few days. At that time, Bell was using drugs on a daily basis and claimed that McGonigal did as well. McGonigal suggested that he and Bell could get money for drugs by robbing a store. McGonigal told Bell what they should wear and what kind of weapon to use. McGonigal said that they should rob the store around 9:30 p.m., because it would be near closing time and it was unlikely that there would be customers inside the store. Initially, Bell refused to participate. However, he and McGonigal were drinking alcohol and McGonigal convinced him. They discussed that McGonigal was going to stay outside as a look-out, while Bell went inside to rob the store. Bell and McGonigal got dressed in the dark clothing that they had discussed. McGonigal got a knife. Then, they walked to the store. McGonigal waited outside while Bell went into the store. As Bell was leaving, McGonigal opened the door and told Bell to hurry up. They returned to Pearsall's house and divided the money and cigarettes. Bell gave some money to Pearsall.

Pearsall testified that he overheard Bell and McGonigal talking about their plan to rob the store. Pearsall said that Bell did not want to participate in the robbery and that McGonigal was trying to convince Bell. Pearsall

heard McGonigal say that he would watch the door while Bell went in with a knife. Pearsall told them not to do it because he did not want any trouble occurring at his house. Pearsall went to bed, but woke up later that night and saw Bell and McGonigal with money, a ski mask, gloves, and cartons of cigarettes.

On September 16, 2013, the jury found McGonigal guilty of conspiracy to commit robbery, conspiracy to commit theft by unlawful taking, conspiracy to commit receiving stolen property, and receiving stolen property.[1] McGonigal was acquitted of robbery and theft. On October 17, 2013, McGonigal was sentenced to five to ten years' incarceration. On October 28, 2013, McGonigal timely filed a post-sentence motion for a new trial in which he raised a weight of the evidence claim. In a memorandum opinion, the trial court denied the motion on February 26, 2014.

On March 26, 2014, McGonigal timely filed a notice of appeal. The trial court ordered, and McGonigal timely filed, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed an opinion that adopted the rationale that the court set forth in its February 26, 2014 memorandum.

---

[1] 18 Pa.C.S.A. §§ 903 (18 Pa.C.S.A. § 3701(a)(1)(ii)); 903 (18 Pa.C.S.A. § 3921(a)); 903 (18 Pa.C.S.A. § 3925(a)); and 3925(a), respectively.

McGonigal raises one issue on appeal: "Did the Court of Common Pleas err by denying Jason McGonigal's Motion for a New Trial when the jury's verdict was against the weight of the evidence presented at trial?" McGonigal's Brief at 4.

In reviewing a challenge to the weight of the evidence, we must consider the following:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 744 A.2d 745, 751–52 (Pa. 2000); **Commonwealth v. Brown**, 648 A.2d 1177, 1189 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id.** at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or

- 4 -

denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 744 A.2d at 753 (emphasis added).

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, 744 A.2d at 753 (quoting ***Coker v. S.M. Flickinger Co.***, 625 A.2d 1181, 1184–85 (Pa. 1993)).

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations modified).

McGonigal argues that Bell's testimony and Pearsall's testimony was too inconsistent and that Pearsall did not corroborate Bell's testimony. McGonigal asserts that the jury could not have found Bell to be credible. McGonigal's Brief at 10. However, Bell's testimony, if believed by the jury, proved that McGonigal was guilty of conspiracy. Pearsall's testimony corroborated that McGonigal was part of the conspiracy. Some details of the story told by Bell and Pearsall differed. The differences include: Bell testified

that Pearsall went with Bell and McGonigal to buy drugs on the day after the robbery, while Pearsall denied going with them; and Pearsall testified that McGonigal was gone before Pearsall woke up the morning after the robbery while Bell said all three were still in the house in the morning. However, these differences were not so inconsistent as to render the verdict one that would shock one's conscience. The jury determined that the testimony from Bell and Pearsall supported the convictions for conspiracy despite the inconsistencies in some of the details. "A jury has the duty to weigh the evidence and resolve conflicts therein." *Commonwealth v. Impellizzeri*, 661 A.2d 422, 436 (Pa. Super. 1995). The jury did so and the trial court did not abuse its discretion in refusing to grant a new trial on this ground.

McGonigal also argues that the jury could not have found Bell credible if it did not convict him of the robbery because Bell's entire testimony, if believed in whole, would support a conviction for robbery as well as conspiracy. As the jury did not convict McGonigal of robbery, he contends that the jury must have discounted Bell's entire testimony. McGonigal's Brief at 7-10. However, the jury "is free to believe all, part, or none of the evidence." *Commonwealth v. Laird*, 988 A.2d 618, 625 (Pa. 2010). The jury was entitled to believe only the part of Bell's testimony that was corroborated by Pearsall which would prove that McGonigal participated in a conspiracy and received part of the stolen money and cigarettes. If the jury believed only that part, but did not credit that testimony which implicated McGonigal in the actual robbery, it would explain the verdict it rendered.

The jury is entitled, in weighing the evidence, to make those determinations and we will not disturb them. ***Commonwealth v. Sanchez***, 36 A.3d 24, 39 (Pa. 2011) ("On appeal, this Court cannot substitute its judgment for that of the jury on issues of credibility. . . .").

Further, inconsistent verdicts are not barred in Pennsylvania:

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.

***Commonwealth v. Frisbie***, 889 A.2d 1271, 1273 (Pa. Super. 2005) (citations and quotation marks omitted). As noted above, the record supports the jury's credibility determinations and verdicts, so we would not disturb the verdicts if they were inconsistent. Therefore, McGonigal's argument has no merit and the trial court did not abuse its discretion in refusing to grant a new trial upon the basis that the verdict was against the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2015